IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 1, 2022

**MARTIGOUS MALONE v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Shelby County**
**Nos. 16-06375, 16-06822, 17-01882, 17-01883  Lee V. Coffee, Judge**

_____

**No. W2022-00018-CCA-R3-PC**

_____

The petitioner, Martigous Malone, appeals the denial of his post-conviction petition, arguing the post-conviction court erred in finding he received the effective assistance of counsel and entered a voluntary guilty plea. Following our review, we affirm the post-conviction court's denial of the petition.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

J. ROSS DYER, J., delivered the opinion of the court, in which ROBERT L. HOLLOWAY, JR. and KYLE A. HIXSON, JJ., joined.

Shae Atkinson, Memphis, Tennessee, for the appellant, Martigous Malone.

Jonathan Skrmetti, Attorney General and Reporter; Benjamin A. Ball, Senior Assistant Attorney General; Amy P. Weirich, District Attorney General; and Meghan Fowler, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

*Facts and Procedural History*

On April 8, 2019, the petitioner pled guilty in four indictments charging him with attempted aggravated robbery, aggravated assault, theft of property, and three counts of aggravated robbery in exchange for an effective sentence of fifteen years in the Department of Correction at 85% release eligibility. The petitioner filed a timely pro se petition for post-conviction relief and appointed counsel subsequently filed an amended petition. In his petitions, the petitioner raised various allegations of ineffective assistance of counsel and challenged the voluntariness of his plea.

At the post-conviction evidentiary hearing, the petitioner's trial counsel, an attorney with almost thirty years' experience, testified regarding his representation of the petitioner. Trial counsel recalled providing the petitioner with a copy of the discovery in his cases on more than one occasion. He reviewed the materials with the petitioner and met with him in jail twice prior to entrance of the guilty pleas. Counsel recounted that there were several cases pending against the petitioner and that the two of them discussed the petitioner's version of events related to each.

With regard to the first case set for trial, the petitioner told counsel the victims could not identify him, but after speaking with the victims, counsel was convinced they could identify the petitioner. Counsel relayed to the petitioner the evidence the State planned to use which, if proven, would be sufficient to convict him. Counsel said they did not have any sustainable defenses; specifically, "we didn't have an alibi witness of any kind. We didn't have an alibi defense at all." Counsel reiterated that the petitioner "didn't provide [him] with an alibi." Asked about the possibility of the petitioner testifying at trial, counsel related the petitioner could not get on the stand and prove he was somewhere else. Additionally, the petitioner was aware his criminal history could be used to impeach him if he testified.

The petitioner was originally offered a global deal of ten years covering all four of his cases, but he turned down the offer and the first case was set for trial. Counsel noted the trial court conducted a comprehensive voir dire of the petitioner regarding his rights and exposure when he declined the first offer. When the first trial date was postponed, the State extended a second offer of twelve years. The petitioner rejected the second offer as well. The case was set for trial a second time, and on the morning of the second trial date, the State, at the request of counsel, extended an offer of fifteen years.

Counsel had discussions with the petitioner throughout the negotiation process regarding his rights and potential exposure if convicted on all of his charges. It was always counsel's opinion that the petitioner should accept a plea. However, the petitioner insisted he "wanted to take it all to trial." Prior to the second trial date, counsel received a telephone call from a man purporting to be the petitioner's father, who was incarcerated in another penal institution, asking counsel to relate to the petitioner that he needed to take the fifteen-year offer. Counsel recalled the petitioner also spoke with a relative in the courtroom on the second trial date, who advised the petitioner it was in his best interest to accept the State's offer and plead guilty. After these communications, the petitioner decided to accept the fifteen-year offer and not proceed to trial.

The petitioner testified that counsel provided him with a copy of the discovery but claimed they did not review the materials together. He acknowledged he and counsel

"always talked, . . . like, we had words," but claimed they never sat down and talked about what was going on with his case. The petitioner recalled that during one of the visits, counsel relayed to him that the State was able to contact one victim but was not able to find the other victims and neither was counsel. Counsel also told the petitioner that he had spoken with the victim in another case and that she did not want the case to proceed and the petitioner to be incarcerated. At that point, the State's offer was for ten years. The petitioner claimed counsel told him he was going to get the trial scheduled and was going to file a motion for an identification hearing. The petitioner averred once he had a trial date, he did not know which case was set for trial because he thought all of his cases were supposed to be set for one day.

The petitioner stated that while he and counsel were talking on his trial date, counsel told him the State changed the offer to fifteen years and then said, "F you. Ain't nothing else I can do." The petitioner noted the offer had gone from "a ten to a twelve back to a ten" prior to then being informed the offer was fifteen years. When counsel cursed at him, the petitioner knew counsel was not going to work in his defense and that was why he decided to plead guilty. When the petitioner entered the courtroom after that encounter with counsel, he told the trial court that he had not committed any crimes and that he would only take the fifteen-year offer if the trial court would explain what an *Alford* plea meant.

The petitioner acknowledged he had been aware of the ten-year offer for three and a half to four years. He said the State briefly raised the offer to twelve years and then "dropped it back down to a ten." He then alleged the bailiff, not counsel, told him the State's offer changed to fifteen years. The petitioner said he spoke to his brother, who was in the courtroom, and his brother told him he supported him whether he wanted to go to trial or make an *Alford* plea. The petitioner then commented, "What person in his right state of mind would take a fifteen and know that he haven't done nothing? I have a right to face my accusers. That's why I had my trial set for four and a half years, 'cause I wanted to go all the way."

The petitioner testified that he had never been to trial before and that counsel did not explain to him what a trial entailed because he and counsel "always bump[ed] heads." The petitioner felt counsel's opinion was "if I didn't take the offer, it's really just screw you." Asked if he had an alibi that could have helped at trial, the petitioner just reiterated he did not do anything and wanted an identification hearing before trial to face the victim.

On cross-examination, the petitioner acknowledged the trial court explained his rights and possible sentences he faced if convicted at trial when he entered his guilty plea. The petitioner also acknowledged prior to his case being set for trial, the trial court voir dired him with regard to his understanding of the trial process, his rights, and his sentencing

- 3 -

exposure. After suggesting the State and counsel possibly had a vendetta against him, the petitioner admitted he pled guilty because it was in his best interest.

When questioned by the post-conviction court, the petitioner acknowledged he testified at his guilty plea hearing that he wanted to accept the State's fifteen-year offer, stating, "'I'm fixing to go on and sign. I just want to get up out of here, out of this jail, soon as possible.'" The petitioner also acknowledged the trial court informed him that if he proceeded to trial, his cases would be tried separately because it would be prejudicial to try all the cases together. The petitioner conceded that had he told the trial court he felt forced to plead guilty or he wanted to go to trial, they would have proceeded to trial because it was set that day and the potential jurors were waiting outside the courtroom.

Asked if there were any witnesses he had wanted counsel to interview, the petitioner mentioned his grandmother for the first time, claiming he was at a flea market she owned in Frayser when one of the crimes took place. He said he gave that information to counsel but counsel never investigated it. The petitioner agreed with the post-conviction court's summation of the petitioner's complaints against counsel that "[h]e hasn't worked in your best interest, said a curse word or two to you, and did not look at your alibi witnesses[.]"

Following the conclusion of the proof, the post-conviction court made extensive oral findings in which it specifically recounted the details of the guilty plea colloquy, as well as subsequently issued a written order, denying the petition. The petitioner filed a timely appeal.

### *Analysis*

On appeal, the petitioner argues he received ineffective assistance of counsel because counsel failed to investigate and preserve witnesses for his case. He also contends his guilty plea was involuntarily entered. The State insists the petitioner failed to meet his burden. Upon our review, we agree with the State.

To prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828, 830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 579 (Tenn. 1997)); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of

the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

## I.      Effective Assistance of Counsel

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579.

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad v. State*, 938 S.W.2d 363, 369 (Tenn. 1996). In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). In the context of a guilty plea, the petitioner must show a reasonable probability that were it not for the deficiencies in counsel's representation, he would not have pled guilty but would instead have insisted on proceeding to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985); *House v. State*, 44 S.W.3d 508, 516 (Tenn. 2001).

The petitioner argues counsel rendered ineffective assistance in failing to investigate and preserve witnesses for his case. Specifically, the petitioner claims he had an alibi witness, his grandmother, who counsel did not have present for his trial. He avers he was at his grandmother's flea market at the time one of the crimes took place, but counsel did

not investigate and secure the presence of his alibi witness, thereby, forcing him to plead guilty.

In its findings, the post-conviction court determined the petitioner failed to prove counsel was deficient in his representation. The court observed the petitioner's assertion that he told counsel about his alibi witness was contrary to counsel's testimony that the petitioner did not provide him with any alibi witnesses. The court resolved the discrepancy on behalf of counsel being the more credible witness. The court noted the petitioner "provided inconsistent, contradictory, and **perjured** testimony" at the evidentiary hearing. In addition, the court determined there was nothing in the record to indicate the petitioner was prejudiced by counsel's representation and noted the petitioner had not offered the alleged alibi witness to testify at the evidentiary hearing.

The record supports the post-conviction court's determinations. According to counsel's accredited testimony, the petitioner did not provide him with the name of any alibi witnesses to investigate. Furthermore, the petitioner failed to present the testimony of his alleged alibi witness at the evidentiary hearing and cannot, therefore, prove ineffectiveness on the part of counsel. Generally, a petitioner fails to establish his claim that counsel did not properly investigate or call a witness if he does not present the witness or evidence to the post-conviction court because a court may not speculate "on the question of . . . what a witness's testimony might have been if introduced" at trial. *Black v. State*, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990) ("When a petitioner contends that trial counsel failed to discover, interview, or present witnesses in support of his defense, these witnesses should be presented by the petitioner at the evidentiary hearing."). Accordingly, the petitioner is not entitled to relief on his claim of ineffective assistance of counsel.

## II.    Involuntarily Plea

The Supreme Court has concluded that a guilty plea must represent a "voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31 (1970). A trial court must examine in detail "the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin v. Alabama*, 395 U.S. 238, 243-44 (1969); *see Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993). Appellate courts examine the totality of circumstances when determining whether a guilty plea was voluntarily and knowingly entered. *State v. Turner*, 919 S.W.2d 346, 353 (Tenn. Crim. App. 1995).

A guilty plea is not voluntary if it is the result of "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats." *Boykin*, 395 U.S. at 242-43; *see Blankenship*, 858 S.W.2d at 904. The trial court must determine if the guilty plea is "knowing" by questioning the defendant to ensure he or she fully understands the plea and

its consequences. *State v. Pettus*, 986 S.W.2d 540, 542 (Tenn. 1999); *Blankenship*, 858 S.W.2d at 904. Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. *Blankenship*, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. *Id.* at 904-05. A petitioner's representations and statements under oath that his guilty plea is knowing and voluntary create "a formidable barrier in any subsequent collateral proceedings [because] [s]olemn declarations . . . carry a strong presumption of verity." *Blackledge v. Allison*, 431 U.S. 63, 74 (1977).

The petitioner asserts his guilty plea was not voluntarily entered because he "continually maintained" he wanted to go to trial and "had no choice but to plead guilty based on the actions of his attorney." The petitioner claims counsel cursed at him and said there was nothing else he could do, so the petitioner believed counsel "wasn't going to work in his defense."

In making its findings on this issue, the post-conviction court recounted the thirty-plus-page guilty plea colloquy in which the trial court "thoroughly reviewed and explained [to] the petitioner his rights[.]" The court observed the petitioner had "***repeatedly*** assured the trial court he understood his rights and the consequences of his guilty plea." The court noted the petitioner's concern was being moved from the local jail as soon as possible and that, even though the petitioner aired complaints about counsel, he still affirmed he wanted to plead guilty. The court concluded "[t]his is a classic case of what our appellate courts call 'buyer's remorse,'" and the petitioner's guilty plea was knowingly, voluntarily, and intelligently entered.

Our review of the transcript of the guilty plea hearing echoes the findings of the post-conviction court. The trial court meticulously ensured the petitioner understood the charges against him, the potential penalties he faced, the rights he was waiving by pleading guilty, and the consequences of his decision. The petitioner faced multiple trials and potentially close to one hundred years' incarceration, which he avoided by his plea. The court allowed the petitioner the opportunity to discuss his various complaints concerning counsel, and the petitioner nevertheless repeatedly affirmed he wanted to enter a guilty plea. Once a guilty plea is knowingly, voluntarily, and intelligently entered, it is not void simply because the petitioner is no longer happy with his decision. *See Robert L. Freeman v. State*, No. M2000-00904-CCA-R3-PC, 2002 WL 970439, at *2 (Tenn. Crim. App. May 10, 2002). The petitioner is not entitled to relief on this claim.

*Conclusion*

Based on the foregoing authorities and reasoning, the judgment of the post-conviction court is affirmed.

_____
J. ROSS DYER, JUDGE